## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Arnaldo Fernández Caraballo, Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, hereinafter referred to as "ATF", being duly sworn, depose and state as follows:

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States empowered by law to conduct investigations and make arrests upon violations of the offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Task Force Officer with the ATF in San Juan, Puerto Rico, and have been so for the past ten (10) years. Prior to becoming a Task Force Officer, I worked over nineteen (19) years as an Agent for the Puerto Rico Police Bureau (PRPB).

3. I am currently assigned to the ATF Violent Crimes Group. As part of the Violent Crimes Group, I conduct investigations of violent gangs, firearms, and narcotics violations. I have specialized training and/or experience in high-level drug enforcement, street- level drug enforcement, narcotics smuggling and distribution, gangs, undercover operations, surveillance and debriefing informants and suspects.

4. All reference herein to any experience refers to experience gained through training, conducting firearms and controlled substances investigations, and participating in those investigations with other experienced investigators, as well as conversations with other law enforcement officers.

5. I am personally familiar with the facts and circumstances surrounding this investigation and with the information contained in this Affidavit, either through personal participation investigation or through discussions with other law enforcement officers and other ATF TFO with personal knowledge of the facts. Since this affidavit is submitted only for the limited purpose of securing the warrant sought, I have not set forth every fact known to me concerning this investigation. I have included what I believe are the facts sufficient to establish probable cause for the warrant sought.

6. Based on my training and experience and the facts set forth below in this affidavit, there is probable cause to believe Samuel RAMOS-BONILLA violated Title 18, <u>United States Code</u>, Section 922 (o) – possession of a machinegun. 18 U.S.C. § 924(c)(1)(A)(i): Possession of a firearm in furtherance of a federal drug trafficking crime 21 U.S.C. § 841(a)(1): Possession of a controlled substance with intent to distribute.

## FACTS SUPPORTING PROBABLE CAUSE

7. On January 12, 2025, agents of the Puerto Rico Police Bureau (PRPB) received information from a paid confidential informant who reported that, an individual known as "Memo" sells drugs in a house located at Street 21 in Monte Verde Sector in Canovanas, Puerto Rico. PRPB Agents stated that the information received described aka Memo as having a dark skin, black hair,

average height, and a strong build.

8. According to the information received by the agents, the house was described as a one-story corner house, painted in blue, with two front doors and a red gate. PRPB agents stated that the information received stated that aka Memo sells drugs in the house even when there are minors present, and sometimes aka Memo is armed will selling drugs.

9. On January 17, 2025, PRPB Agents located the house at Street 21 in Monte Verde Sector in Canovanas matching the description provided by the CI. The Agents were also able to identify that the house was identified as house number 455.

10. On January 17, 2025, at approximately 11:45am PRPB Agents arrived at the residence under investigation and started surveillance.

11. Approximately at 11:55 a.m. PRPB agents observed an unidentified male (later identified as Samuel RAMOS-BONILLA aka Memo) step out of the residence under surveillance. As described by the informant, RAMOS-BONILLA had dark skin, was wearing a black t-shirt and gray sport shorts. Agents saw RAMOS-BONILLA arranged some chairs in front of the residence, looks for something on the side of the residence, and re-entered the residence. Minutes later, another dark-skinned male arrived driving a black pickup truck.

12. PRPB Agents observed as the driver got out of the black pickup truck and walked toward the house under investigation, counting money. At that moment, RAMOS-BONILLA came out of the house and exchanged a few words with the driver of the black pickup truck. The agents observed how the RAMOS-BONILLA received money from the driver of the pickup truck, counted it, and entered the residence under investigation. RAMOS-BONILLA stepped out the house this time with a ziploc bag in his hands, the same containing what according to the agents' training and experience were several bags with cocaine in them. RAMOS-BONILLA opened the bag and took out several bags and gave them to the driver of the pickup truck, who checked them and shook RAMOS-BONILLA's hand and left the premises. After several minutes, the agents ended the surveillance for the day.

13. On January 24, 2025, at approximately 11:05am PRPB Agents returned at the residence under investigation and started the surveillance. At approximately 9:00am PRPD agents observed RAMOS-BONILLA step out of the residence under investigation.

14. PRPB Agents observed RAMOS-BONILLA walk to the house next door marked with the number 454. The agents observed that from the house marked with the number 455 came a man dressed completely in black and began talking to RAMOS-BONILLA.

15. PRPB Agents observed the man dressed in black re-entered the residence marked with the number 454 and came out holding a grocery bag and handed it to RAMOS-BONILLA and closed the door of the house marked with 454.

16. The agents observed RAMOS-BONILLA take a ziploc bag out of the grocery bag, and it contained a countless ziploc bags with what they recognized as apparent cocaine. RAMOS-

BONILLA continued to check the contents of the grocery bag and walked with the man dressed in black back to the residence under investigation and entered it. At that moment, the agents ended surveillance.

17. On January 28, 2025, a Municipal Judge issued a search warrant for RAMOS-BONILLA's residence (identified with the number 455 in Street 21 in Monte Verde Sector in Canovanas).

18. On January 29, 2025, at approximately 06:00am, PRPB Agents, assigned to Metro Narcotics Unit, executed the search warrant at residence 455, Street 21 in Monte Verde Sector in Canovanas PR.

19. PRPB Agents presented RAMOS-BONILLA with the search warrant for residence.

20. According the PRPB Agents, a K-9 alerted on the living room, in RAMOS-BONILLA bedroom, and in the lower part of the house. At that moment, agents placed RAMOS-BONILLA under arrest and advised him hi his Miranda Warnings.

21. PRPB Agents seized the following evidence from the living room:

- One (1) plastic container containing marijuana

22. PRPB Agents seized the following evidence from RAMOS-BONILLA bedroom:

- One (1) gray grocery bag containing eight (8) plastic containers containing marijuana (field tested positive to marijuana), one hundred and one (101) vials containing crack (field tested positive to cocaine), ninety-nine (99) ziploc bags containing cocaine (field tested positive to cocaine) and forty-two (42) pharmaceutical pills.

23. PRPB Agent stated that, at that moment. RAMOS-BONILLA freely and voluntarily stated that he wanted to tell something to the agents. RAMOS-BONILLA stated that his wife had nothing to do with everything found in the house, that everything found was his, and that in the lower part of the house they were going to find a gun which also belonged to him.

24. PRPB Agents stated that they went to the lower part of the house with RAMOS-BONILLA and RAMOS-BONILLA pointed with his finger to where the gun was. PRPB agents stated that RAMOS-BONILLA told the agents that the firearm was unloaded. PRPB agents retrieved a black fanny-pack from the location that RAMOS-BONILLA had pointed out. It contained the following:

- one (1) Glock pistol, model 20, caliber 10mm, serial number SKD532, with an attached silver colored machinegun conversion device that is easily noticeable to anyone handling the pistol (pictured in Attachment A).
- two (2) Glock magazines; and
- One hundred and thirty-nine (139) rounds of .40 caliber ammunition.

25.     PRPB Agents transported RAMOS-BONILLA to the PRPB Metro Narcotics Unit for further investigation. PRPB Agents stated that at the Metro Narcotics unit, they again read RAMOS-BONILLA his Miranda's Rights and Warnings, which he understood and signed, stating that he was not willing to speak with authorities without having his lawyer present. PRPB Agents stated that RAMOS-BONILLA told the agents that, although he did not want to speak with them, he did want to provide a written statement accepting that everything seized at his house belonged to him. PRPB Agents provided an official form and Mr. RAMOS-BONILLA wrote that he took responsibility for all items found in his residence.

26.     ATF assistance was requested in this investigation. ATF Agents arrived at the PRPD Metro Narcotics Unit and assisted in the investigation.

27.     A preliminary field test examination of the firearm Glock pistol, model 20, caliber 10mm, serial number SKD532 without ammunitions, indicated that this firearm can fire more than a single round of ammunition per single function of the trigger, which would meet the legal definition of a machine gun. Based on my training, knowledge and experience with ATF, the device on the Glock was not installed by the manufacturer and was placed on the firearm with the sole purpose of illegally modifying it to fire fully automatic, meaning that is capable of expelling more than one (1) projectile from one single pull of the trigger. The conversion device can be readily observed by anyone who loads, unloads, charges, cleans, or disassembles the firearm because there is a contrast between the device and the slide of the firearm.

28.     The investigation further revealed that no firearms or ammunition, including the type described above, are manufactured in Puerto Rico and therefore, the investigation concluded that the firearm had been shipped or transported in interstate or foreign commerce.

[Remainder of page intentionally left blank]

## CONCLUSION

Based on the above facts, I have probable cause to believe that Samuel RAMOS-BONILLA have violated federal firearm and controlled substance laws. Specifically, he has violated Title 18, United States Code, Section 922 (o) – possession of a machinegun. 18 U.S.C. § 924(c)(1)(A)(i): Possession of a firearm in furtherance of a federal drug trafficking crime 21 U.S.C. § 841(a)(1): Possession of a controlled substance with intent to distribute. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge this 30th of January 2025.

ARNALDO FERNANDEZ-CARABALLO (Affiliate)
Digitally signed by ARNALDO FERNANDEZ-CARABALLO (Affiliate)
Date: 2025.01.30 12:47:05 -04'00'

Arnaldo Fernandez-Caraballo
ATF Task Force Officer

Subscribed and sworn before me pursuant to FRCP 4.1 at 2:53 PM by telephone, this 30th day of January.

Hon. Héctor Ramos-Vega
United States Magistrate Judge

ATTACHMENT A







